UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-18-HRW

GEORGE M. BRAMMELL                                                    PLAINTIFF

VS.                        **MEMORANDUM OPINION AND ORDER**

LINDA M. SPRINGER, DIRECTOR,
UNITED STATES OFFICE OF PERSONNEL MANAGEMENT          DEFENDANT

        In June, 2003, George M. Brammell, the *pro se* plaintiff, filed a position classification

appeal with United States Office of Personnel Management (OPM).  He argued that his position

with the Department of Veterans Affairs ("the VA") should have been reclassified from the

GS-13 grade level to the GS-14 level, retroactive to November 17, 2002.  On January 31, 2007,

the OPM cancelled the appeal. The reason given for the cancellation was that the plaintiff had

retired from his position on January 3, 2007.

        On February 20, 2007, the plaintiff filed a "Request for Writ of Mandamus" in this Court

[Record No. 1].[1]  He asks this Court to render a decision on his grade classification appeal.  The

OPM has through its counsel filed a "Motion to Dismiss" [Record No. 12].  The *pro se* plaintiff

has filed his "Response" [Record No. 15], and the OPM has filed its "Reply" [Record No. 17].

The OPM's motion is ripe for consideration.

I. The Complaint

---

[1]

        The initiating document is entitled "Petition for Writ of Mandamus."  For simplicity's sake,
the Court will refer to this document as a "Complaint."

In 1969, the plaintiff began his service with the VA in the Adjudication Division of the VA Regional Office located in Huntington, West Virginia.   In 1976, he was promoted to Supervisory Veterans Service Representative, a Grade 13 supervisory position (GS-996-13.1).

On November 17, 2002, the plaintiff was re-assigned within the same grade to a position titled "Appeals Team Coach." Plaintiff stated he remained in the same grade (GS-13) even though his new position required him to supervise a group comprised primarily of GS-13 employees called Decision Review Officers ("DRO") [Record No. 1, p. 2].   He stated that two months later, on January 10, 2003, the VA issued a decision that the GS-13 classification for "Appeals Team Coach" was proper [*Id*].

Plaintiff disagreed with the January 10, 2003 decision [*Id*.].  He alleged that because his new position required him to supervise primarily GS-13 DROs, his "Appeals Team Coach" position should have been classified at a Grade 14 level.   In his complaint, the plaintiff did not identify how many GS-13 DROs he supervised [*See* Record No. 1. p.2].[2]   Plaintiff stated that he was unable to resolve his dispute over his grade within his office.  He stated that the GS-13 grade for his position "had been assigned by a very high profile study group called the Claims Processing Improvement (CPI) Commission." [*Id*.].

The plaintiff states that he filed his position classification appeal with the OPM on June 3, 2003.  He  did not attach his actual June 3, 2003 appeal to his complaint.  He did attach a June

---

[2]

In his subsequently filed "Response" to the OPM's "Motion to Dismiss," the plaintiff stated that he supervised **five** DROs.  He implied in his "Response" and that DROs comprised **twenty-five percent** of the group which he supervised.

27, 2003 letter from Ricardo Sims to William Robbins, Director of the OPM, which letter acknowledged the filing of the appeal [*See* Sims Letter, Record No. 1-3].

Plaintiff alleged that after "more responsible VA personnel officials" received a copy of his appeal to the OPM, these VA officials corrected the policy to reflect that one who supervised GS-13 employees should in fact be in a Grade 14 position."[3] [Record No. 1, p.3].  He stated that notwithstanding that change in policy, the VA refused to correct his position classification to GS-14 [*Id.*].  He further alleged that VA officials not only continued to assign him *de facto* GS-14 responsibilities without grade correction, but that they also intentionally delayed the processing of his OPM appeal [*Id.*].

The plaintiff alleged that his OPM appeal languished until the date of his retirement, which was January 3, 3007 [*Id.*, p.1].  He claims that the OPM issued a letter cancelling his appeal without a decision [*See* Record No. 1-4, OPM Letter, 1/31/07]. In that letter, OPM

---

[3]

In support of this statement, the plaintiff refers to an undated document entitled "FINAL DRAFT Appeals Team" [Record No. 1-5].  At the beginning of the document, the following language is encased:

**Recommendation 8**:

"If DRO's constitute less than 25 percent of the total Appeals Team, they should remain under the supervision of the Appeals Team coach, rather than the Office of the Service Center Manager."

The document then states as follows in the text:

"In the CPI Model as originally designed all members of the financial teams, including the Appeals team, were supervised by the coach of the team. However, HR Classification guidance states that if Decision Review Officers(DRO's) comprise 25 percent or more of the Appeals Team, a GS-14 versus GS-13 coach is warranted.  In lieu of this fact, in November 2003 Central Office revised the CPI model and placed the DRO's under the supervision of the Office of the Service Center manager."

Director William B. Middendorf, Jr., informed the plaintiff that "since you no longer encumbered the appealed position . . . your appeal is hereby cancelled." [*Id.*].

The plaintiff alleged that there is no law or regulation which allows the OPM to cancel a position classification appeal when an employee retires.[4]  Plaintiff asks the Court to order OPM to resurrect his position classification appeal and determine the proper grade level of his position from November 17, 2002 until January 3, 2007, the date of the his retirement.

II. The OPM's "Motion to Dismiss" and "OPM's Reply"
[Record Nos. 12 and 17] [5]

A. Factual Allegations
(1). The June 3, 2003 Appeal

The OPM states that on June 3, 2003, the plaintiff was classified as a Grade 13 Supervisory Veterans Claims Examiner [Record No. 12, p. 2].  On that date, the plaintiff filed a position classification appeal with OPM.  In that appeal, the plaintiff stated that although he was classified as a GS-13 employee, he was supervising an "appeals team" comprised of two GS-10 employees, two GS-12 employees, and two GS-13 Decision Review Officers ("DRO")

_____

[4]

Plaintiff alleged that 5 C.F.R. 511.611 lists the circumstances under which the OPM can cancel a classification appeal. According to the plaintiff, there are only two circumstances which allow the OPM to cancel an appeal, which are as follows:

(a.) on receipt of the employee's written request for cancellation or,
(b.) on failure to prosecute."

[Record No. 1, p.1].

[5]

The OPM's motion contained significant legal arguments but did not include many factual specifics.  For that reason, the Court directed the OPM to file a Reply to the plaintiff's Response. For economy and a more cohesive reading, the Court will summarize the OPM's two filings ["Motion," Record No, 12 and "Reply," Record No. 17] as one document.

[*Id.*, pp. 2-3]. Based upon his assertions that he supervised the two GS-13 DROs, the plaintiff argued that based on the position evaluation criteria set forth in the General Schedule Supervisory Guide (Supervisory Guide), his position should have been classified at the GS-14 level [*Id.*, p.3].

(2). <u>Appeal Status: June 27, 2003 to August 3, 2004</u>

OPM provides a summary of  relevant subsequent events in its Reply [Record No. 17]. The summary of events is based upon the sworn Declaration of William B. Middendorf, the Director of the OPM [Record No. 1702].

On  June 27, 2003, the OPM accepted the plaintiff's appeal of his position classification [Id., p.1].  The plaintiff's documents verify that he  withdrew his appeal on November 28, 2003. [*Id*].  On December 30, 2003 the plaintiff requested that the OPM reopen his appeal and to classify his position using the General Schedule Leader Grade Evaluation Guide (Leader Guide), instead of the General Schedule Supervisory Guide (Supervisory Guide).[6]  The OPM explained that the reopened appeal had been put on hold because on December 24, 2003, the VA had withdrawn the team leader duties by an electronic mail message [*Id.*, p.2].

OPM states that in a telephone call of March 4, 2004, the plaintiff asked that his appeal be re-opened.  The OPM states that it did so on March 12, 2004.  OPM noted that in a letter dated April 5, 2004, the plaintiff requested an extension of time so that he could pursue other options [*Id.*].  The OPM states that the plaintiff requested the extension of time because the VA

---

[6]

OPM states that the plaintiff made this request because he functioned as a team leader of GS-13 DROs [*Id.*, pp.2-3].

5

had withdrawn his team leader status. [*Id*.].

OPM noted that the case was suspended until June 5, 2004, when OPM received a June 2, 2004 letter from the plaintiff asking OPM to reopen his appeal. [*Id*.]. The documents attached to the plaintiff's "Response" verify this sequence of events.  By letter of August 3, 2004, OPM notified the plaintiff that it was again reopening the position classification appeal that the plaintiff originally had filed in June 2003. [Id, and Record No. 15-Attachment 12].

(3). Appeal Status: August 3, 2004 to January 3, 2007

The OPM offers the following explanation for the two and a half-year delay in the processing of the plaintiff's appeal between August 3, 2004 and June 7, 2006 :

> "Notes entered into the OPM Classification Appeal Management Information System (CAPMIS) between September 15, 2004 and June 7, 2006 state that questions arose and were resolved in connection with the plaintiff's classification appeal, the proper title of his position and the approval of the title change."

[Record No 17, pp.2-3]

 The OPM offers no specific reason for the delay in action on the plaintiff's appeal during this two and a half-year interval. Summarized, the OPM explains that on June 7, 2006, it had completed a draft of the final decision.  The draft was  based on the plaintiff's position using the Leader Guide criteria. The OPM states that the draft had been transmitted to the manager of its classification appeals program [*Id*., p 3].

The OPM then explains that over two months later, on August 23, 2006, the plaintiff contacted the OPM to ascertain if a delay would result if he asked OPM to consider his appeal using the criteria in the Supervisory Guide instead of the Leader Guide [Id].  The OPM states that it informed the plaintiff that a delay would in fact result, because it would require a new

6

evaluation using the Supervisory Guide [*Id*.].  The OPM states that the appeal was "reactivated using the Supervisory Guide" on October 19, 2006, because the plaintiff submitted documents stating that he fully supervised DROs [*Id*.].

The OPM states that in late December 2006, or early January 2007, the plaintiff sent it additional arguments pertaining to his appeal.  According to the OPM, the plaintiff stated that by that time the plaintiff perceived that VA officials believed that his position should be classified at the GS-14 grade level [*Id*.].  By letters dated January 31, 2007, and February 1, 2007, the OPM notified plaintiff and the VA, respectively, that it had cancelled plaintiff's position classification appeal because he had retired from federal service, effective January 3, 2007 [*Id*.].  In its motion, the OPM states that when plaintiff retired from his GS-13  position, it cancelled his appeal without issuing a decision [Record No. 12-2, p.1].

## B. Legal Arguments

The OPM sets forth three arguments in support of its motion to dismiss.

### 1. Lack of Jurisdiction

The OPM  argues that the Court lacks jurisdiction to consider this case. On this issue, the OPM contends that the plaintiff's retirement on January 3, 2007 rendered his OPM appeal moot. The OPM cites numerous cases, including but not limited to *Coalition for Government Procurement v. Federal Prison Industries*, 365 F.3d 435,458 (6th Cir. 2004), for the proposition that a case becomes moot where no effective relief may be given for the alleged violation.

### 2. Retroactive Benefits Precluded by Cases and Statute

Next, the OPM asserts that retroactive classification of the plaintiff's position, back pay, and possible adjustments to retirement benefits are not available to an individual in the plaintiff's circumstances. The OPM contends that although the plaintiff requests the Court to order OPM to reopen and adjudicate his position classification appeal from November 17, 2002 until January 3, 2007, [Record No.1, p.1] his ultimate goal is to obtain the retroactive reclassification of a position that he no longer occupies, back pay and/or adjustments to his retirement benefits.

The OPM cites cases which hold that there can be no retroactive reclassification, and no recovery of back pay or other employment benefits, on the basis of a claim that one should have been, but was not in fact, appointed to a position. *United States v. Testan*, 424 U.S. 392 (1976); *Riplinger v. United States*, 695 F. 2d 1163 (9th Cir.1983); *Baker v. United States*, 614 F. 2d 263 (Ct. Cl. 1980); and *Leopold v. Civil Service Commission*, 450 F. Supp. 154 (E. D. N.Y. 1978).

The OPM assigns great emphasis to *Testan*. The facts in that case bear some similarity to the instant proceeding. In *Testan*, the respondents, two trial attorneys whose positions were classified at the GS-13 grade level, claimed that according to the pertinent position classification standard their duties and responsibilities fulfilled the requirements for classification at the GS-14 grade level. 424 U.S. at 393. They further alleged that their duties and responsibilities were identical to those of attorneys occupying GS-14 positions. 424 U.S. at 394. As a result of their position classification appeal, the now defunct U.S. Civil Service Commission (CSC) concluded that their positions were properly classified at the GS-13 level.[7] *Id*.

---

[7]

The OPM is the successor to the CSC with respect to position classification matters. Title 5 U.S.C. §§ 1101, 1103(a)(5)(B), 5101- 5115.

8

The respondents thereafter filed an action in the Court of Claims seeking an order directing the retroactive reclassification of their positions together with back pay as of 1970 when their requests for reclassification were originally denied. Id. The Court of Claims remanded the case to the CSC to determine the proper classifications of the respondents' position. 424 U.S. at 395-396. The Court of Claims further held that, if the CSC determined that its prior classification decision was erroneous, the Court was authorized to award the respondents monetary damages for back pay. 424 U.S. at 395.

The Supreme Court concluded that the respondents' claims were barred by the doctrine of sovereign immunity because neither the Classification Act, 5 U.S.C. §§ 5101-5115, nor the Back Pay Act, 5 U.S.C. § 5596, made the United States liable for pay lost through an allegedly illegal position classification. 424 U.S. 399-407. The Supreme Court found that no provision in the Classification Act specifically provided back pay for individuals who allegedly had been erroneously classified. 424 U.S. 399-403.

The OPM further notes that in recognition of the Supreme Court's decision in *Testan*, Congress amended the Back Pay Act, codified in 5 U.S.C. § 5596, to provide specifically that the Act does not apply to reclassification actions. 5 U.S.C. § 5596(b)(3). See Pub. L. 95-454, Section 702, 92 Stat. 1216 (1978).

Finally with respect to *Testan*, the OPM argues that *Testan* applies to other emoluments that an individual might claim, such as possible adjustments to retirement benefits, as the result of a claimed wrongful classification. *Baker v. United States*, 614 F. 2d 263 (Ct. Cl. 1980); *Leopold v. Civil Service Commission*, 450 F. Supp. 154 (E.D.N.Y. 1978).

9

The OPM contends that *Testan* and the Back Pay Act, 5 U.S.C. § 5596, control this case and dictate that the plaintiff can not obtain any type of retroactive back pay or retirement benefits under the theory that the VA used an illegal position classification process. The OPM concludes that remand of his position classification appeal to OPM would serve no purpose.

### 3. Cancellation of OPM Appeal Justified

The OPM asserts that the plaintiff's retirement justified its cancellation of his appeal. The OPM argues that it was precluded by statute and regulation from continuing to consider the appeal of an individual who no longer is an employee and no long encumbers the appealed position. The OPM cites 5 U.S.C. §§ 5112(a)(1) and (b); 5 C.F.R § 511.607(a)(1); 5 C.F.R. 603(a)(1), all of which the OPM discusses in detail in its Motion [Record No. 12-2, pp. 15-17].

The OPM argues that the plaintiff's reliance on 5 C.F.R. § 511.611 was misplaced. The OPM contends that it had authority to cancel the appeal once the plaintiff retired. It concedes that while an appeal might result in the retention of the original position, even a favorable decision would be limited to prospective (not retroactive) relief under *Testan*, *Baker*, and *Leopold*.

### III. Plaintiff's Response to the OPM's Motion to Dismiss [Record No. 15]

In his Response, the plaintiff essentially restates the claims set forth in his complaint, to wit; that because he supervised other GS-13 employees on the VA's "Appeals Team," he should have been classified as a GS-14 employee and not as a GS-13 employee. He asserts that the VA officials knew that he qualified for a GS-14 classification yet failed to take the proper remedial action. He states that while the VA failed to elevate his grade classification, it promoted five individuals whom he (plaintiff) has supervised to that of GS-13 classification.

10

In particular, the plaintiff takes exception to the VA's January 10, 2003, decision which stated that a GS-13 classification of his position was appropriate [Record No. 15-5 and 15-6]. According to the plaintiff, the VA reached this conclusion based on the erroneous assumption that because the other GS-13 employees on the "Appeals Team" functioned with extraordinary independence, the supervisor of these GS-13 employees did not warrant a higher grade classification. [Record No. 15-1, p.6].

Plaintiff alleges that Greg Mason, the Director of the VA's Huntington, West Virginia office became angry when he (plaintiff) questioned the VA's failure to promote him to a GS-14 classification. Plaintiff claims that even though Mason admitted that he (plaintiff) should have had a GS-14 classification, Mason informed him: (a) that he would not allow the plaintiff to appeal his classification; (b) that he was going to give the plaintiff a new position, that of "Appeals Team Coach," and (c) that he was going to order a desk appeal on the new position.

Plaintiff alleges that Mason said he was going to have someone in the Jackson, Mississippi office perform that audit and that he (Mason) was going to make sure that the plaintiff did not get anything out of his appeal [Record No. 15-1, p.4].  Plaintiff alleges that Mason contacted Associate Deputy Under Secretary Mike Walcoff about this matter, and that Walcoff ordered the audit.

Plaintiff alleges after the conversation with Mason, he consulted with the VA Personnel Specialist.  He states that the Specialist referred him to the OPM Supervisory Guide.  Plaintiff contends that according to the Supervisory Guide, his "Appeals Team Coach" title entitled him to a GS-14 classification.  Plaintiff states that he informed the Jackson, Mississippi office that

11

because 25 % of the employees whom he supervised were GS-13 employees, he should have received the GS-14 classification [*Id.*, p. 5].

Plaintiff contends that after he filed his appeal on June 3, 2007, Huntington Service Manager Carl Ray contacted him.  Plaintiff states that Ray informed him (plaintiff) "that the Agency had now decided that their January 10, 2003 decision was wrong and that my position was correctly a GS-14."[*Id*].

Plaintiff states that at some point in 2003, William E. Robbins, the Director of the Jackson, Mississippi Personnel Office also told him that the VA's January 10, 2003 decision had been wrong and that the plaintiff should have been classified as a GS-14 employee [*Id.*, p.7]. According to the plaintiff, Robbins apologized for the VA's incorrect decision as to his classification, and assured him that the OPM would be ordered not only to correct his grade classification but also to conduct a "consistency review" in order to correct the grade of similar positions in other offices.

Plaintiff states that on September 2, 2003, he met with his immediate supervisor ("Mr. Ray") and Betsy Weiler, the Huntington Personnel Specialist.  Plaintiff alleges that Weiler admitted that the VA's January 13, 2003 decision had been incorrect.  Plaintiff states that "for a variety of reasons" Weiler and Ray asked him to withdraw his June 3, 2003 appeal [*Id.*, p.8].

Plaintiff alleges that in late November, 2003, OPM Director William Middendorf called him and informed him that: (1) that he should be classified as a GS-14 employee; (2) that the VA's January 10, 2003 decision was in error; and (3) that the VA was going to take action to remove the GS-13 Decision Review Officers (DROs) from the Appeals Team. [*Id.*].  Plaintiff

states that Middendorf also asked him to withdraw his appeal "since the only matter the OPM had jurisdiction of was classification of the position and that the Agency had now admitted that I had been correct and that the position was indeed a GS-14." [*Id*].

Plaintiff states that he asked Middendorf about back pay, in light of the VA's admitted error [*Id*.]. Plaintiff states that Middendorf indicated that he was not aware of a situation where an agency had admitted making a wrong decision before OPM had reviewed an appeal, but that he was sure that "back pay" was not OPM's responsibility.[*Id*., pp. 8-9].

Plaintiff states that the VA then undertook a series of actions between 2004 and 2006 inconsistent with the previous assurances of Robbins, Ray, Weiler, and Middendorf, that his position should be and would be reclassified to a GS-14. These actions are outlined in pp. 9-13 of the plaintiff's Response. Summarized, the plaintiff claims that the OPM refused to recognize that he had been improperly classified since 2002 and refused to address his appeal.

Plaintiff alleged that OPM wrote him a letter dated August 3, 2004 stating that his appeal would be analyzed and addressed within 60 days [*Id*., p. 10]. Plaintiff states that the OPM's August 3, 2004 communication was the last correspondence he received until the January 31, 2007, letter notifying him that his appeal had been cancelled because of his retirement [*Id*.].

IV. DISCUSSION

There appears to be some documentation supporting the OPM's delay in processing Plaintiff Brammell's appeal between June 27, 2003 and August 3, 2004.[8] During a substantial

---

[8]

The delay during this period of time is excusable only if the Court totally disregards the plaintiff's allegations that four (4) people with whom he was dealing told him that the VA had initially erred in classifying him as a GS-13 employee, and that the mistake would be corrected.

part of this two-year time period, the plaintiff withdrew his own appeal, apparently in the hope that the VA would, of its own volition, correct its failure to elevate him to a grade 14 position.

The OPM's subsequent delay in processing Plaintiff Brammell's appeal, for two years between August 3, 2004 (date the plaintiff asked for reinstatement of the appeal) and August 23, 2006 (the date on which the plaintiff asked the OPM to recalculate his appeal using the Supervisory Guide instead of the Leader Guide), does not appear to be justified. In its November 20, 2007 Order [Record No. 16], the Court specifically asked the OPM to explain the reason for the failure to ever address the appeal its August 3, 2004 reinstatement.

What the Court received in response to this inquiry was a vague statement from the OPM which reads as follows:

> "Questions arose and were resolved in connection with the plaintiff's classification appeal, the proper title of his position, and the approval of the title change. Attachment 2. These notes state that an OPM decision concerning the classification was written and reviewed, and put into a final draft during this period of time."

[Record No. 17, pp. 2-3].

Instead of offering a simple explanation, the OPM instead attached a set of cryptic, abbreviated "notes" to Mr. Middendorf's Declaration [Record No. 17-3]. These "notes," while perhaps comprehensible to the OPM, suggest a protracted bureaucratic run-around of the plaintiff's appeal. The appeal languished for so long the plaintiff finally retired. The OPM's delay was nothing short of deplorable. However, under the governing case-law and statutes, Plaintiff Brammell unfortunately has no recourse. The first reason involves a preliminary issue

According to the plaintiff, he withdrew his appeal on November 28, 2003 based on Middendorf's verbal representation that he would be reclassified as a GS-14 employee.

14

as to the plaintiff's standing.

## A. Claims are Moot

The plaintiff postures his complaint as a petition seeking mandamus relief, *i.e*, an order determining his classification status. It is undisputed that the plaintiff is now retired and was retired when he filed this action.

Controlling federal statutes and regulations require a person to actually occupy, or encumber, a position in order to vest the OPM with authority to consider a grade classification request. Title 5 U.S.C. § 5112 (a)(1) states the OPM may "ascertain currently the facts as to the duties, responsibilities, and qualification requirements of a position."

Section 5112(a) further provides that OPM may place a newly created position in its appropriate class and grade, decide whether a position is in its appropriate class and grade, and change the class and grade when the facts warrant. In addition, 5 U.S.C. § 5112(b) specifies that "an employee affected" may request at any time that OPM exercise its authority under subsection (a) and OPM "shall act" on the request.

OPM regulations, at 5 C.F.R. part 511 implement the appeal provisions at 5 U.S.C. § 5112. Specifically, 5 C.F.R. § 511.607(a)(1) reiterates that OPM will ascertain currently the facts concerning a specific position when it states that OPM "will decide the appeal on the basis of the actual duties assigned by management and performed by the employee." Section 511.607(b)(1) further specifies that the class, grade, or pay system to which an employee is not assigned by an official personnel action is not appealable or reviewable. *See also* Section 511.603(a)(1) (an employee may appeal to OPM the occupational series or grade of his "official

position," that is, the position to which he is officially assigned); Section 511.605 (a)(1) (an employee may submit an appeal of his "official position" at any time).    Case law also supports the OPM's argument that a retired federal employee, or any other employee who is for any reason separated from his federal employment, is not an "employee" for purposes of the Back Pay Act, 5 U.S.C. § 5596. *See Wallace v. Office of Personnel Management*, 283 F.3d 1360, 1362 (D.C. Cir. 2002) (because Wallace was a retired employee, he was not an "employee" covered by the Back Pay Act, and thus was not entitled to interest on retirement benefits under § 5596(b)(2)(A)); *Ainslie v. United States*, 355 F.3d 1371 (D.C. Cir. 2004) (Army National Guard Technician who was not re-employed until nearly one year after his application for reappointment, where statute required offer of reappointment within six months of application, was not an "employee" during period for which he sought back pay)

Here, Plaintiff Brammell does not "currently" encumber the GS-13 position for which he seeks a reclassification.  He did not encumber that position when he filed this action, the Court can not render mandamus relief.  A case is moot where no effective relief may be given for the alleged violation. *Coalition for Government Procurement v. Federal Prison Industries*, 365 F. 3d 435, 458 (6th Cir. 2004).  As the plaintiff has vacated his position, his claim is moot.

The Court has noted that the OPM unreasonably delayed rendering a disposition of the appeal between August, 2004 and August, 2006.  In large part, if not all, the OPM's two-year delay caused the instant claims to *become* moot.  The plaintiff finally opted to retire on January 3, 2007, prior to the OPM's cancellation of the appeal without a decision.  While it is true that the plaintiff did ask to have his claim re-evaluated under the Leader Guide in August, 2006, the

16

fact remains that for two years prior to that request, he had received no ruling from the OPM.

The plaintiff undoubtedly experienced frustration over the OPM's refusal to issue a ruling on the merits for so long. To provide the plaintiff with a limited sense of process, albeit an unfavorable outcome, the Court will address the other aspect of the case.

### B. Construed Claims for Back Pay Lack Merit

The plaintiff has maintained that he should have been classified at a Grade 14 instead of a Grade 13. Although he did not specifically demand monetary compensation in his complaint, it is obvious that the plaintiff ultimately seeks back pay and other benefits retroactive to November 17, 2002 through January 3, 2007.[9] This is clear from the plaintiff's own filings.

In his "Response" to the "Motion to Dismiss," the plaintiff specifically states that in a November, 2003 phone conversation with OPM Director William Middendorf, he (plaintiff) inquired about recovering back pay "since the Agency had admitted their decision was wrong." [Record No. 15, pp. 8]. Plaintiff then stated in his Response that Middendorf informed him that OPM could not award back pay. [*Id*., pp. 8-9].

Based on this information, the Court must agree with the OPM that what the plaintiff actually seeks in filing this action is not only a determination that he should have been classified as a Grade 14 employee, but also an award of back pay under 5 U.S.C. § 5596 (b)(1) and other derivative benefits (*i.e.*, recalculated retirement benefits) retroactive to November 17, 2002, through January 3, 2007, the plaintiff's retirement date.

---

[9] Absent a potential shot at retroactive benefits, it is hard to imagine what the plaintiff would gain by filing this action.

Reclassification of the plaintiff's position is not an available remedy - - either by the Court or the OPM - -because the claim became moot on January 3, 2007.  Assuming that on some date between June 27, 2003 and January 2, 2007 the OPM *had* actually determined that the plaintiff should have been classified as a Grade 14 employee effective November 17, 2002, the question then becomes, to what would the plaintiff have been entitled ?

The answer is,  plaintiff could have only received prospective benefits as of the date that they were hypothetically awarded.  Under the Back Pay Act, 5 U.S.C. § 5596(b)(1), federal employees are entitled to back pay, and interest thereon, only when they have been affected by an "unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances or differentials of the employee." [*Id*.].

The next question is, how is an "unjustified or unwarranted personnel action" defined ? That answer is found in 5 C.F.R. § 550.803(d) & (e). The definition is as follows:

> (d) To be unjustified or unwarranted, a personnel action must be determined to be improper or erroneous on the basis of either substantive or procedural defects after consideration of the equitable, legal, and procedural elements involved in the personnel action.

> (e) A personnel action referred to in section 5596 of title 5, United States Code, and this subpart is any action by an authorized official of an agency which results **in the withdrawal or reduction** of all or any part of the pay allowances, or differentials of an employee and includes, but is not limited to, separations for any reason (including retirement), suspensions, furloughs without pay, demotions, reductions in pay, and periods of enforced paid leave whether or not connected with an adverse action . . . .

[*Id*.] (Emphasis added).

Here, Plaintiff Brammell did not sustain a "reduction" in benefits of the position to which

18

he was actually appointed (Grade 13 position) and that is the requirement under Back Pay Act, the regulation and the case law. *See Testan*, 424 U.S. at 406.  *Testan* expressly rejected the notion that denial of a higher grade classification, even if a higher grade classification was warranted under the equities and circumstances, constituted a valid claim under the Back Pay Act. *Testan*, 424 U.S. at 405-407.

Put in other words, Plaintiff Brammell can not assert an actual or construed claim for pay or benefits associated with the higher Grade 14 position because he was never appointed to that higher position. *See Testan*, 424 U.S. at 406. While the plaintiff and even the Court may speculate as to *why* he was denied that promotion in grade, the reality is that Plaintiff Brammell would only have a legitimate claim if the VA had wrongfully deprived him of benefits for a position to which he was actually appointed (his Grade 13 position), even if he did in fact perform the duties of a higher graded position.

*Testan*, and the progeny of cases which followed it, instruct that failure to promote an employee, even where that failure is wrongful, does not result in the "withdrawal or reduction" of an employee's compensation such as to trigger a claim under the Back Pay Act.  *See Testan*, 424 U.S. at 407, 96 S.Ct. at 957 ("[T]he Back Pay Act, as its words so clearly indicate, was intended to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position."); *Donovan v. United States*, 580 F.2d 1203, 1207-08 (3d Cir.1978) ("The unwarranted failure timely to promote plaintiff in accordance with Army regulations, though a wrongful act, is not the type of personnel action calling for back pay under the Back Pay Act, for the action has not caused plaintiff to suffer any reduction in grade

19

but has only delayed his advancement to a higher level. Even if we were to conclude that the plaintiff had been subjected to a 'personnel action,' his claim would still fail because the action did not result in any 'reduction' in benefits." ); *Mitchell v. Secretary of Commerce*, 715 F. Supp. 409, 411 (D.D.C. 1989)("The Court simply cannot conclude that the failure to pronote {sic} an employee, even where that failure is wrongful, as it was here, results in the "withdrawal or reduction" of an employee's compensation); *McNutt v. Hills*, 426 F. Supp. 990, 1002 (D.D.C.1977); *Predmore v. Allen*, 407 F. Supp. 1067, 1072-74 (D. Md.1976) ("Predmore [the victim of a failure to promote on the basis of her sex] has not been 'subjected to a reduction in' her 'duly appointed emoluments or position'.) (quoting *Testan*).[10]

The Court concludes that 5 C.F.R § 511.611 did not preclude the OPM from "canceling" the plaintiff's long pending appeal without a determination on the merits, once he retired. The OPM correctly argues that at best, any favorable ruling would be limited to prospective relief, not back pay or other retro-active benefits.

For these reasons, it is not necessary for the Court to address the remaining arguments raised by the OPM. Because the plaintiff asserts no actual or construed claim for relief, the Court must dismiss the plaintiff's "Petition for Writ of Mandamus" with prejudice.

---

[10]

Based on the holding of these cases and their application to Brammell' complaint, it is unnecessary for the Court to discuss or analyze the plaintiff's detailed factual assertions as to changes in VA policy over the years; the perceived political forces within the Agency which he alleges were at play; his hope that the VA would voluntarily reconcile its conflicting messages as to the role of "Appeals Team Coaches; and the litany of notes of numerous phone calls and e-mails.

Again, the plaintiff's frustration is evident and even understandable. His factual allegations do not, however, change or negate the harsh reality of the *Testan* decision, and its limitation on actions against the United States and its agencies.

CONCLUSION

The OPM's "Motion to Dismiss" [Record No. 12] is **GRANTED**.   This action is

**DISMISSED WITH PREJUDICE**, and a separate Judgment will be entered.

This January 8, 2008.

Signed By:

_Henry R Wilhoit Jr._

**United States District Judge**